**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**
_____

**GABE'S CONSTRUCTION CO. INC.,**
           **Plaintiff,**

**NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD,**
           **Involuntary Plaintiff,**

**v.**                                                                 **Case No. 12-cv-0122**

**HOLLY PIPE CORPORATION, et al.,**
           **Defendants.**
_____

## **DECISION AND ORDER**

### **I. Background**

Plaintiff Gabe's Construction Company, Inc ("Gabe's") rented pipe from defendants NST Corporation and Holly Pipe Corporation ("Holly Pipe") for use in a construction project in Florida. The pipe broke during installation causing significant damage. Gabe's submitted a claim to its insurer, National Fire Insurance Company of Hartford ("National Fire"), which paid Gabe's $692,928. Gabe's then brought this diversity action against defendants and their insurers and named National Fire as an involuntary plaintiff. National Fire brought a subrogation claim against Gabe's and defendants demanding reimbursement for the money it paid Gabe's. While the litigation was pending, Gabe's settled with defendants for $250,000. National Fire was apprised of the negotiations leading to the settlement but chose not to be a party to it. As part of the settlement, Gabe's agreed to indemnify defendants for sums defendants might be found to owe National Fire on its subrogation claim. Before me now are Gabe's' and defendants' separate motions to dismiss National Fire's subrogation claim. Defendants argue that they should be dismissed because the

indemnification agreement makes Gabe's liable if National Fire prevails on its subrogation claim, and Gabe's argues that it should be dismissed because it has not been made whole for the loss it sustained.

## II. Motions to Dismiss

### A. Choice of Law

National Fire argues that Florida law applies because I previously determined that the rental agreement between Holly Pipe and Gabe's was governed by Florida law. However, my previous decision is not controlling because the present issues do not arise under the rental agreement but under Gabe's' insurance policy and the settlement agreement between Gabe's and defendants. In a diversity case, I apply Wisconsin's choice of law principles to determine the governing substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Sybron Transition Corp. v. Sec. Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997). Under Wisconsin law in a contract case, I apply the law of the state with which the contract has the most significant relationship. *Emp'rs Ins. Co. of Wausau v. The Marley Co.*, 461 F. Supp. 2d 879, 881 (W.D. Wis. 2006) (citing *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 239 (1978)). I make this determination by considering the parties' contacts with a state including the place of contract; the place of performance; the location of the subject matter of the contract; and the domiciles, places of incorporation and places of business of the parties. *Sybron Transition Corp.*, 107 F.3d at 1255. Based on these factors, I conclude that Wisconsin law governs the issues arising both under Gabe's insurance policy and the settlement agreement. The insurance policy was negotiated in Wisconsin and to be performed primarily in Wisconsin. Further, Gabe's

primary place of business is Wisconsin. And the settlement agreement calls for the application of Wisconsin law.

**B. Defendants' Motion to Dismiss**

I first address whether National Fire's subrogation claim against defendants should be dismissed based on the settlement agreement. I treat the agreement as a contract and if it "clearly discloses the [parties'] intent, [I] . . . apply [it] as written." *United States v. Ettrick Wood Prods.*, 916 F.2d 1211, 1219 (7th Cir. 1990) (applying Wisconsin law). The settlement agreement provides that Gabe's (1) "fully and forever releases Defendants . . . for any claims . . . that ha[ve], could have been, or may ever be asserted as a result of the Settled Matters;" (2) "shall defend, indemnify, and hold Defendants harmless from and against any and all claims . . . currently pending in the Case or made or brought in the future by any third party in connection with the Settled Matters, specifically including the claim made by National Fire in the Case by virtue of the payments it made to Plaintiff;" and (3) "shall immediately move for a *Rimes* hearing, any other proceedings necessary to resolve any dispute concerning any claim made by National Fire arising from the Settled Matters, and effect dismissal of the Case." Cerjak Aff. Ex. A, at 3 (ECF No. 107-1).This language makes clear that Gabe's and defendants agreed that in the event that National Fire brought a subrogation claim against defendants, Gabe's would defend and indemnify defendants for any sums for which they were found liable. Wisconsin approves of indemnification agreements in this context. *Schulte v. Frazin*, 176 Wis. 2d 622, 634–35 (1993) (concluding that "the injured party should have the right to settle on its own terms" and that "refusal to recognize indemnification agreements could hamper plaintiffs'

3

settlement attempts"). Thus, defendants' motion to dismiss National Fire's subrogation claim against defendants will be granted, and National Fire must look to Gabe's to recover its subrogation interest.

**C. Gabe's' Motion to Dismiss**

Next, I address National Fire's rights against Gabe's. "Subrogation is an equitable assignment under which the subrogee stands in the shoes of the original holder of the cause of action," and it is based on the "principle that someone . . . who pays for the wrong of another should be permitted to look to the wrongdoer to the extent that he or she has paid a debt or demand that the wrongdoer should have paid." 2 Arnold P. Anderson, *Wisconsin Insurance Law* § 10.3 (6th ed. 2010). The policy behind subrogation rests on equitable principles, including "(1) ensuring that the plaintiff is fully compensated for loss; (2) preventing unjust enrichment; and (3) ensuring that the wrongdoer is held responsible for his conduct." *Muller v. Soc'y Ins.*, 309 Wis. 2d 410, 440 (2008). Thus, subrogation is permitted when the rights of those seeking it outweigh those of its opponents. *First Nat'l Bank of Columbus v. Hansen*, 84 Wis. 2d 422, 429 (1978); *Emp'rs Health Ins. v. Gen. Cas. Co. of Wis.*, 161 Wis. 2d 937, 956 (1991) ("Subrogation . . . [is] a matter of doing justice after balancing the equities." (internal quotations and citation omitted)).

**1. Whether the "made whole" doctrine applies**

One important equitable factor is whether the injured party has been made whole. Under the "made-whole doctrine," a subrogated insurer is not entitled to a share of the recovery from a tortfeasor if the injured party has not been fully compensated for its losses. *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541–43 (1977). The made-whole doctrine

is not absolute or simple to apply. *Muller*, 309 Wis. 2d at 433. However, when a subrogated insurer and its own insured are competing for a limited pool of settlement funds that cannot cover both parties' claims, the made-whole doctrine applies and the insurer may not recover unless its insured has been made whole. *Id.* at 435, 439–40. Conversely, when the available pool of settlement funds is sufficient to cover the claims of both the subrogated insurer and its insured, the made-whole doctrine does not apply and a subrogated insurer is entitled to recover regardless of whether its insured was made whole. *Id.* This is so because when adequate funds are available to cover both claims and the insured still settles for less than a made-whole amount, it should not be allowed to argue that it was not made whole. *Id.* at 445.

When an insured and a tortfeasor have settled and included an indemnification clause in their agreement, they in effect create a limited pool of settlement funds over which the insured and subrogated insurer must compete, thus triggering the made-whole doctrine. *Schulte*, 176 Wis. 2d at 634–35. "When an injured insured settles with the tortfeasor and that person's insurer without resolving the subrogated insurer's part of the claim; the settling parties ask the court to determine whether the injured party has been made whole; and the subrogated insurer has an opportunity to participate in the [made-whole determination], the subrogated insurer's rights of subrogation depend on whether the settlement made the plaintiff whole." *Schulte*, 176 Wis. 2d at 637. Allowing the subrogated insurer "[f]ull participation in the settlement process and the [made-whole determination], combined with a finding that the insured is less than whole, shifts the equitable balance away from the insurer." *Muller*, 309 Wis. 2d at 439. This is true even

when the insured settles far below the defendants' policy limits. *See Schulte*, 176 Wis. 2d at 638 (Steinmetz, J., dissenting) (noting that the insured in *Schulte* settled for far below policy limits). Gabe's and defendants followed the *Schulte* procedure, and National Fire has been afforded the opportunity to participate in settlement and litigation. Thus, whether National Fire is entitled to recover from Gabe's depends on whether Gabe's has been made whole for its loss.

National fire argues that *Muller*'s holding that "[w]here policy limits are sufficient to cover all related claims, the insured cannot settle for less than policy limits and then" invoke the made-whole doctrine, bars application of the made-whole doctrine in the present case because defendants' $1,000,000 policy limit is arguably sufficient to satisfy its claims as well as Gabe's. *Muller*, 309 Wis. 2d at 445. However, *Muller* does not govern because it did not involve an indemnification agreement, *id.* ("The present case does not involve an indemnification agreement.") and it recognized the significance of this fact, stating, "*An indemnification agreement limits available funds.* If the insured is not made whole by a settlement that includes an indemnification agreement, the insured has claimed the available pool, and . . . the insurer is out of luck," *id.* at 444. Thus, it is irrelevant that defendants' policy limit was arguably enough to satisfy Gabe's and National Fire's claims; the indemnification agreement limited the available settlement funds and created competition for those funds, triggering the made-whole doctrine under *Schulte*. *See Emp'rs Mut. Cas. Co. v. Kujawa*, No. 2014AP732, 2015 WL 522294, ¶ 9 (Wis. Ct. App. Feb. 10, 2015) (concluding that a settlement with an indemnification agreement reduced the available pool and resulted in competition for a limited amount of money despite the fact

6

that defendants' policy limit could easily have covered the claims of both the plaintiff and his subrogated insurer).

National Fire also argues that the made-whole doctrine does not apply because, when Gabe's settled with and agreed to indemnify defendants, it breached its obligations under the policy, which required it to do everything necessary to secure National Fire's rights and to cooperate with National Fire in litigation and settlement of claims. However, the record indicates that Gabe's made efforts to secure National Fire's subrogation rights, including naming it as a party in this litigation and cooperating in discovery, expert witness retention, and mediation efforts, and that Gabe's decision to settle for the amount it did was made in good faith based on perceived weaknesses in its claims as well as potential coverage issues raised by defendants' insurer.[1] *See Kujawa*, No. 2014AP732, 2015 WL 522294, ¶ 12 (concluding that plaintiff did not breach similar policy obligations because it "acted in good faith and had reasonable reasons for compromising the claim"). Additionally, an injured party has a right to settle on its own terms, *Schulte*, 176 Wis. 2d at 634, and the made-whole doctrine cannot be circumvented by contract. *Ruckel v. Gassner*, 253 Wis. 2d 280, 295 (2002). Thus, even if Gabe's breached its policy obligations, the made-whole doctrine applies.

**2. Whether Gabe's has been made whole**

Thus, the question presented is whether Gabe's was made whole by the settlement, thus entitling National Fire to subrogation. Often, courts will resolve the made-whole issue

---

[1] For the same reason, I also reject National Fire's argument that I should not apply the made-whole doctrine because Gabe's settlement with defendants amounted to collusion. *See also Schulte*, 176 Wis. 2d at 636–37 (rejecting similar arguments regarding collusion).

through a hearing, *see Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263 (1982), designed to determine the plaintiff's damages. *Muller*, 309 Wis. 2d at 429. In the present case, it is unclear whether the parties seek a hearing. However, the made-whole question appears to be one of fact and absent consent by the parties, I cannot resolve fact-issues based on paper submissions. *See Ross v. Franzen*, 777 F.2d 1216, 1220 (7th Cir. 1985). Thus, I will deny Gabe's motion to dismiss and schedule a status conference to discuss the next step in these proceedings. In the meantime, Gabe's must maintain the $250,000 it received from defendants in trust.

### III. Motion to Strike

I will deny National Fire's motion to strike an email it sent to Gabe's as moot as I did not consider the email in reaching the decision discussed above.

### IV. Conclusion

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss (ECF No. 105) is **GRANTED**. All claims against defendants are dismissed.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss (ECF No. 101) is **DENIED**.

**IT IS FURTHER ORDERED** that National Fire's motion to strike (ECF No. 112) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that plaintiff shall maintain any settlement amount it receives from defendants in trust pending resolution of National Fire's subrogation rights.

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on **April 2, 2015 at 11:00 a.m.** The court will initiate the call. Attorneys should call the court at 414-297-1285 to advise of their participation.

Dated at Milwaukee, Wisconsin, this 9th day of March, 2015.

                                              s/ Lynn Adelman
                                              _____
                                              LYNN ADELMAN
                                              District Judge